**[Cite as *State v. Coleman*, 2022-Ohio-4029.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210600 |
| | | TRIAL NO. 21CRB-16674 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| TISAAN COLEMAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 14, 2022

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Rebecca Barnett,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}  Defendant-appellant Tisaan Coleman appeals the judgment of the Hamilton County Municipal Court convicting him of aggravated menacing, a misdemeanor of the first degree.  Coleman argues that his conviction is based on insufficient evidence and is against the manifest weight of the evidence, and he also challenges the trial court's imposition of court costs.  For the reasons that follow, we affirm the judgment of the trial court.

*Facts and Procedure*

{¶2}  On September 15, 2021, Coleman was charged with aggravated menacing under R.C. 2903.21 for threatening his neighbor with a firearm.  On September 30, 2021, a bench trial was held.  At trial, Demetrius Peterson, Coleman's neighbor, testified that he had been sitting outside of his apartment building with his daughter and her boyfriend. Peterson continued to sit outside for a few minutes after his daughter and her boyfriend went inside to get ready for work. He testified that when he went back inside the building, he saw Coleman standing in front of his daughter and her boyfriend pointing a gun at them.  Peterson testified that, at this point, he walked up the stairs to his apartment on the third floor to call the police.  Then, Coleman, "ran behind [him] up the steps" and while pointing a gun at him said, "no motherfucker, you can get some too."  Peterson then went inside his apartment and called the police.  Peterson testified that Coleman's sister came into the building after the incident had occurred to "get [Coleman] and take him away."

{¶3}  Cincinnati Police Officer Bittinger testified that Peterson was "very nervous and agitated and seemed like he may have been a bit frightened," when police arrived. Bittinger testified that Peterson recounted to him that Coleman said, "I'll

shoot you." Bittinger testified that he knocked on Coleman's door, but there was no answer. Coleman's apartment was not searched, and a firearm was not found.

{¶4} Coleman testified in his own defense, and stated that he has Asperger's syndrome, and often has difficulty communicating with others. Coleman testified that on the day of the incident, he left his apartment to walk his dog and check his mail. On his way back to into the building, Coleman walked past Peterson and then, once inside, "said some short words" to Peterson's daughter's boyfriend as they passed on the stairs "about some taunts that w[ere] made a week earlier" during an apartment building inspection. Specifically, Coleman testified that "I asked him if he said something about me. He said he didn't. I walked up the steps." Coleman elaborated, "I asked him if he had something – I asked him what he had against me. I don't know. I guess from what another person told me * * * I'm a topic of conversation, and I asked why. Other than that, it was cool. We went past each other." Coleman denied threatening anyone with a gun, testifying, "I don't carry guns. I don't do things like that. It's not me. I don't like to be there. I have a really hard time being loud. It's stressful." Coleman testified that although he "heard somebody," he was not sure if the police officer knocked on his door because he was in his bedroom watching television.

{¶5} Coleman's sister, Kai Coleman, testified for the defense. She testified that she was in Coleman's apartment that day and sat by his open door while he went to check his mail. She denied hearing any interaction between her brother and anyone else in the hallway. Kai testified that she had never seen Coleman interact with Peterson before, and that she had never seen Coleman with a gun. Kai testified that

she did not answer the door when the police officer knocked because she was in the bathroom.

{¶6} A long-time neighbor and former building maintenance manager, Randy Stoughton, also testified for the defense. He stated that he often hears arguments in the building's hallways, but that he did not recall hearing an argument or any threats on the day of the incident, though he added it is often difficult for him to hear over the noise of his television. Stoughton testified that he had never seen Coleman with a gun.

{¶7} After hearing this testimony, the court found Coleman guilty as charged. Coleman was sentenced to 180 days in jail, with credit for 34 days already served. Coleman timely appealed, and the court granted a motion to stay the sentence pending the appeal.

## *Sufficiency and Weight of the Evidence*

{¶8} In Coleman's first assignment of error, he contends that his conviction was based on insufficient evidence and runs counter to the manifest weight of the evidence.

{¶9} When this court reviews a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Sufficiency review "raises a question of law, the resolution of which does not allow the court to weigh the evidence." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph two of the syllabus; *see State v. Guthrie,* 1st Dist. Hamilton No. C-180661, 2020-Ohio-501, ¶ 7.

Essentially, we ask "whether the evidence against a defendant, *if believed,* supports the conviction." (Emphasis sic.) *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16.

{¶10} A manifest-weight argument on the other hand, "challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10. When we review a challenge to the manifest weight of the evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins,* 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). The court should only reverse the conviction and grant a new trial in "exceptional case[s] in which the evidence weighs heavily against the conviction*." Martin* at paragraph three of the syllabus. This is because "the weight to be given the evidence and credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶11} Coleman was convicted of aggravated menacing under R.C. 2903.21(A), which provides: "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person." A person acts knowingly "when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). As relevant here, serious physical harm to persons includes physical harm that "carries a substantial risk of death," or involves some incapacity, disfigurement, or acute pain. R.C. 2901.01(A)(5)(b) – (e).

5

{¶12} If believed, Peterson's testimony established that Coleman threatened multiple individuals in his apartment building with a firearm, and followed Peterson to his unit, before pointing a firearm at him and delivering a verbal threat. Peterson testified that after Coleman threatened him with a gun, he immediately went into his apartment and called 911. He stated, "[W]e stay next door. I can't even walk out the door. I wouldn't feel safe walking out that door." Peterson's testimony, coupled with Bittinger's testimony that Peterson was "very nervous and agitated and seemed like he may have been a bit frightened" was sufficient to demonstrate that Peterson feared Coleman was going to cause him serious physical harm. Thus, Coleman's conviction was supported by sufficient evidence. *See, e.g., In re Shad*, 1st Dist. Hamilton Nos. C-080965 and C-081174, 2009-Ohio-3611, ¶ 17 (holding conviction for aggravated menacing was based on sufficient evidence where the victim testified that the defendant pointed a gun at him, and the victim was afraid he would be shot).

{¶13} Coleman primarily makes a manifest-weight argument because his focus is on Peterson's lack of credibility. He contends that because Peterson's testimony had some slight inconsistencies, it was not credible, and the court should not have believed it.

{¶14} The trial court was confronted with conflicting evidence in this case. And to be sure, Peterson's testimony certainly had some inconsistencies. Nevertheless, the court chose to believe Peterson. *See, e.g., State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 19-20 (holding that the conviction was not against the manifest weight of the evidence even though there was conflicting testimony about the interaction, the defendant denied owning a gun, and a gun was not found, because credibility determinations are primarily for the trier of the facts).

6

**{¶15}** In handing down its guilty verdict, the court stated that "[t]he officer absolutely substantiated the prosecuting witness's state of fear and belief of being caused harm." The court went on to state that the motive "was actually revealed by Mr. Coleman who said that he felt like he had been taunted in the past * * * and someone had told [him] that the daughter's boyfriend had made some comments on a recent inspection." The court did not give any weight to Stoughton's testimony that he did not recall hearing any threats that day because the court found it difficult to hear Coleman when he testified even though the court had told him to speak louder. The court stated, "You do not have to yell a threat in order to utter a threat." The court further found that if Coleman had not done anything, he would have opened the door when the police officer knocked on it.

**{¶16}** While we certainly weigh the evidence and consider witness credibility when we review for manifest weight, the trier of facts—the judge in this case—was in the best position to assess the credibility of the witnesses. *See State v. Landrum,* 1st Dist. Hamilton No. C-150718, 2016-Ohio-5666, ¶ 17 (affirming aggravated-menacing conviction under manifest-weight review and holding that "The trial court was free to accept the victim's version of the events and reject [the defendant's] story * * * especially where [the defendant] admitted to being angry upon seeing the victim, and the victim's version was corroborated by another witness at the scene."). This is not one of those exceptional cases in which the evidence weighs heavily against the conviction. And we cannot say that that the trial court clearly lost its way and created a manifest miscarriage of justice. Accordingly, the first assignment of error is overruled.

### *Court Costs*

{**¶17**}  In Coleman's second assignment of error, he contends that the court erred by imposing court costs in the sentencing entry, without imposing them at the sentencing hearing.  In support of this argument, Coleman cites to *State v. Davis*, 1st Dist. Hamilton Nos. C-200249, C-200250, C-200251 and C-200252, 2021-Ohio-2954, for the proposition that a reviewing court should reverse the order to pay court costs where the trial court fails to impose them at the sentencing hearing.  The state concedes this assignment.  While our review of the record confirms that the trial court failed to impose costs at the sentencing hearing, a remand order is not required.

{**¶18**}  We recently explained in *State v. Fissel,* 1st Dist. Hamilton No. C-210483, 2022-Ohio-1856, ¶ 17, that "To the extent that *Davis* is inconsistent with [*State v.*] *Beasley* [153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028,] and R.C. 2947.23(C), the latter control."  *See Beasley* at ¶ 265 (explaining that the amendments to R.C. 2947.23(C) allow a defendant to file a motion to waive costs without appellate court intervention).  R.C. 2947.23(C) provides that, "The court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution, * * * at the time of sentencing *or at any time thereafter.*" (Emphasis sic.) *Fissell* at ¶ 17, quoting R.C. 2947.23(C).  Thus, Coleman does not need this court to remand the matter to the trial court and can instead file a motion to waive court costs.  The second assignment of error is overruled.

### *Conclusion*

{**¶19**}  In light of the foregoing analysis, we overrule Coleman's first and second assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

8

**BERGERON, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

