[Cite as *State v. Washington*, 2025-Ohio-5830.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO.  C-250032 |
| | | TRIAL NO.  24/CRB/17018 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| DARRELL WASHINGTON, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 12/31/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Washington*, 2025-Ohio-5830.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250032 |
| | | TRIAL NO. | 24/CRB/17018 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| DARRELL WASHINGTON, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 31, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Julieana S. Hay*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** Defendant-appellant Darrell Washington was convicted of aggravated menacing for threatening his neighbor, L.J. In a single assignment of error, he argues that his conviction is contrary to the manifest weight of the evidence because, in his view, L.J.'s account lacked credibility due to inconsistencies in her testimony.

**{¶2}** We hold that Washington's conviction is not contrary to the manifest weight of the evidence simply because the trier of fact believed L.J.'s testimony and disbelieved Washington's. We overrule Washington's assignment of error and affirm his conviction.

## I. Factual and Procedural History

**{¶3}** The State charged Washington with misdemeanor aggravated menacing in violation of R.C 2903.21.

### A. Washington's trial

**{¶4}** At trial, the State presented testimony from L.J., her friend M.P., and the responding officer. In Washington's defense, Washington, Washington's brother, and Washington's friend testified.

**{¶5}** In June 2024, Washington moved into his second-floor apartment and met L.J., his first-floor neighbor. Their neighborly relationship quickly soured, with each blaming the other for the animosity.

**{¶6}** One afternoon in October 2024, L.J. sat on the apartment building's front porch—her dog was in front of the door. Washington opened the door to leave the building without noticing either L.J. or her dog, and the door hit her dog. After a short but tense exchange with L.J., Washington walked to a neighboring apartment building to visit his friend.

{¶7}    Washington later returned to his apartment building and met L.J., her dog, and her friend M.P. After another tense exchange, L.J. sprayed Washington with mace. Washington returned to his friend's apartment and called the police.

1.  The State presented evidence that Washington attacked L.J.

{¶8}    L.J. testified that she rarely interacted with Washington. She described him as "belligerent" and "a bully." Later, she insisted that she had no issues with Washington, but "[h]e has a problem" with her.

{¶9}    Turning to the day in question, L.J. was cooking on her grill in front of the building when Washington "kicked the door open" and injured her "emotional support animal." L.J. asked Washington, "What's wrong with you?" He replied, "'F' you, you dumb 'B'" and threatened to kill both L.J. and her dog. According to L.J., she did not provoke Washington.

{¶10}    After Washington left, L.J. called her friend M.P. to "be a witness . . . in case anything transpired." L.J. also testified that she called the police, but there is no record of that call. She recalled that Washington returned holding a beer and shouted, "'B' you going to die today." He was "already belligerent." According to L.J., she was seated on the porch as Washington approached and motioned to her in "a threatening manner." So, she stood up and sprayed Washington with mace.

{¶11}    M.P. testified that he had met Washington before the encounter and was aware of "several other incidents" between Washington and L.J. that contributed to the growing animosity between the two. M.P. said that L.J. had reported times that Washington had threatened her and had asked M.P. to "come over . . . to make sure nothing goes sideways."

{¶12} M.P. testified that Washington was angry and "belligerent" when he returned from his friend's apartment. M.P. clarified that Washington was not showing signs of intoxication and did not raise his hands "in a threatening way."

{¶13} M.P. recalled that Washington approached L.J., "leaned over her physically," and threatened to kill L.J. and her dog. In response, L.J. told Washington to "stay away from her," stood, and sprayed Washington with mace. As Washington retreated, M.P. told L.J. to "call the police and make a report of it" to "get in front of this." M.P. saw L.J. call the police.

{¶14} The responding officer testified that Washington appeared agitated. While the officer could smell a "slight odor" of alcohol on Washington's breath, Washington did not appear to be intoxicated.

2. Washington presented a vastly different account

{¶15} Washington testified in his defense that L.J. had made vague threats to him after he moved into his apartment. Eventually, she told Washington that she "can't stand" him and wanted him out of the building. Washington described L.J. as "verbally abusive."

{¶16} As Washington recalled, he accidentally hit her dog with the door when he exited from the building. Washington apologized, but she replied, "I hate you. You hit my damn dog. I should kill your ass." Washington denied making any threats against L.J. or her dog. And according to Washington, M.P. was with L.J. at this point.

{¶17} Washington went next door to his friend's apartment to give L.J. space. After a few minutes, he went to a nearby store and returned to his friend's apartment with a beer as a gesture of appreciation. Then, Washington decided to return home.

{¶18} Washington encountered L.J., her dog, and M.P. in front of the apartment building. Washington wanted to avoid L.J.'s dog and was 30 feet away when

he asked L.J., "[W]hy are you acting like that. Can I get to my apartment?" Washington testified that he was speaking in a "normal tone," while L.J. responded aggressively, "like a heathen." Washington denied threatening L.J.; instead, he explained that he asked her why she was blocking the building's entrance. Washington recalled being more than ten feet from L.J. when she threatened Washington with her dog and then sprayed him with mace. Washington returned to his friend's apartment.

{¶19} Washington's friend and brother both testified that L.J. had accused Washington of breaking into L.J.'s storage unit. His friend testified that she was in her apartment the entire day and did not hear Washington threaten L.J. at any point. She did, however, hear Washington yell, "she maced me." After Washington ran to her apartment to wash his eyes out, Washington called 9-1-1 two times.

B. *The trial court found Washington guilty*

{¶20} The trial court found Washington guilty of aggravated menacing, explaining that "everybody testified pretty consistently and credibly except for Mr. [] Washington." And the trial court found M.P. particularly credible. It noted that the responding officer smelled alcohol coming from Washington, but Washington had denied having any alcohol that day. Plus, the trial court did not believe that Washington was 20 feet away from L.J. when she sprayed him with mace.

{¶21} The trial court sentenced Washington to 180 days in jail with 173 days suspended and credited him for time served, imposed one year of probation with treatment, and ordered Washington to stay away from L.J.

## II. Analysis

{¶22} Washington argues that his aggravated-menacing conviction is contrary to the manifest weight of the evidence.

6

**{¶23}** We may reverse a conviction as being against the manifest weight of the evidence and order a new trial if we find, following an independent review of the record, that the trier of fact "clearly lost its way and created a manifest miscarriage of justice." *State v. Saleem*, 2024-Ohio-3162, ¶ 42 (1st Dist.). As part of our review, we must independently weigh the evidence and consider all reasonable inferences and the credibility of the witnesses. *Id.*

**{¶24}** To convict Washington of aggravated menacing, the State had to prove beyond a reasonable doubt that Washington knowingly caused L.J. to believe that Washington would cause her serious physical harm. *See* R.C. 2903.21(A).

**{¶25}** Washington argues that the evidence did not prove that he threatened L.J. because, in his view, her account lacked credibility. First, Washington argues that his sudden threat to kill L.J. and her dog is inexplicable. Second, he points out that L.J. remained outside of the building despite being so afraid of Washington's threat that she called M.P. Third, he argues that L.J.'s description of Washington approaching her in a threatening manner conflicts with M.P.'s account. Finally, Washington insists that L.J. could not have sprayed Washington with mace without spraying herself and her dog if Washington was inches from her face.

**{¶26}** We acknowledge that some of L.J.'s testimony conflicted with other witnesses. For instance, L.J.'s description of Washington's demeanor and mannerisms as he returned to the apartment conflicts with M.P.'s account. She testified that he had a beer in his hand and gestured in a threatening manner, while M.P. recalled that Washington did not make a threatening gesture to L.J.

**{¶27}** But in other ways, L.J.'s account is corroborated by M.P.'s testimony. Washington was convicted for threatening L.J., and both L.J. and M.P. testified that

Washington leaned over L.J. and threatened to kill her and her dog before she sprayed him with mace. And like L.J., M.P. described Washington as angry upon his return.

**{¶28}** Aggravated-menacing cases often reduce to witness-credibility issues, where the trier of fact must assess conflicting accounts of the interaction at issue. *See State v. Coleman*, 2022-Ohio-4029, ¶ 14 (1st Dist.); *see also State v. Carson*, 2019-Ohio-4550, ¶ 19 (1st Dist.). While we consider witness credibility in a manifest-weight review, "'the credibility of witnesses is primarily an initial determination for the trier of fact.'" *Saleem*, 2024-Ohio-3162, at ¶ 48 (1st Dist.), quoting *State v. Brown*, 2024-Ohio-2148, ¶ 17 (1st Dist.). Our review is confined to the transcript, but the trier of fact has access to "innumerable telltale indications which fall from a witness during the course of his examination [that] are often much more of an indication to judge or jury of his credibility and the reliability of his evidence than is the literal meaning of his words." *Govt. of Virgin Islands v. Aquino*, 378 F.2d 540, 548 (3d Cir. 1967). So, a trier of fact presented with inconsistencies "'is free to believe or disbelieve all or any of the testimony.'" *State v. Gatewood*, 2021-Ohio-3325, ¶ 69 (1st Dist.), quoting *State v. Shine-Johnson*, 2018-Ohio-3347, ¶ 65 (10th Dist.).

**{¶29}** We have held that an aggravated-menacing conviction is not contrary to the manifest weight of the evidence, despite conflicting accounts of the incident, "where [the defendant] admitted to being angry upon seeing the victim, and the victim's version was corroborated by another witness at the scene." *State v. Landrum*, 2016-Ohio-5666, ¶ 17 (1st Dist.). Significantly, M.P. corroborated L.J.'s testimony that Washington threatened her after he returned to the apartment building. The trial court weighed the evidence, including the contradictions and inconsistencies, and arrived at a judgment that is not contrary to the manifest weight of the evidence.

### *III. Conclusion*

**{¶30}** We overrule the assignment of error and affirm the judgment of conviction.

Judgment affirmed.

**ZAYAS, P.J.,** and **NESTOR, J.,** concur.