**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2021-Ohio-3311.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3311

THE STATE OF OHIO, APPELLANT, *v.* JONES, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2021-Ohio-3311.]**

*Criminal law—Aggravated murder—Court of appeals reversed conviction on ground that the evidence was not sufficient to show that defendant acted with prior calculation and design—Judgment reversed.*

(No. 2020-0368—Submitted March 31, 2021—Decided September 23, 2021.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-170647, 2020-Ohio-281.

_____

**DEWINE, J., announcing the judgment of the court.**

{¶ 1} Earl Jones shot and killed Kevin Neri.  Finding that Jones acted with prior calculation and design, a jury convicted Jones of aggravated murder under R.C. 2903.01(A).  The court of appeals reviewed the evidence, drew its own inferences therefrom, and concluded that the evidence was insufficient to show that

Jones acted with prior calculation and design. As a result, it reversed the aggravated-murder conviction and discharged Jones from further prosecution for that crime.

{¶ 2} The court of appeals erred. In reviewing whether evidence is sufficient to establish the prior-calculation-and-design element of aggravated murder, a court must consider whether the evidence, when viewed in the light most favorable to the prosecution, supports a finding that a defendant acted with advance reasoning and purpose to kill. The court of appeals failed to properly apply this standard and instead conducted its own weighing of the evidence. In this case, a reasonable juror could properly find that Jones acted with prior calculation and design. We reverse the court of appeals' judgment to the contrary.

## I. Background

### A. *An ongoing feud culminates in a deadly shooting*

{¶ 3} Earl Jones and Kevin Neri didn't much like each other. The link connecting the two men was Cyerra Prather. Jones had fathered a child with Prather, but their relationship did not last. Prather eventually began dating Neri, who moved into her home.

{¶ 4} To call the relationship between Neri and Jones combative would be to put it mildly. Jones harassed Neri through text messages and social media, often using racial epithets. And Neri gave as good as he got, including taunting Jones by claiming to be a better father. The two men would argue when Jones came to Prather's house to pick up or drop off their child. More than once, Prather's neighbors reported the disturbance to the police. The situation became so fraught that Prather and her family tried to minimize the contact between the two men, arranging for Neri to be out of the house when Jones came to pick up the child or ensuring the exchanges went as quickly as possible. The two men also developed a habit of regularly scheduling fistfights—often at a time and location away from

Prather's home. But the fights amounted to nothing: Neri would wait at the agreed-upon location and Jones would never show.

{¶ 5} The simmering animosity boiled over on the day of the shooting. That morning, Jones arranged to pick up his child the next day for visitation. And Neri, on learning Jones's intentions, scheduled yet another fight. Jones later changed his plans, and it was agreed that he would pick up the child at 8:00 p.m. that night rather than the next afternoon. He then texted Neri to ask if he would be there that evening. Neri replied that he would be there and the two men agreed to meet at an intersection six houses away from Prather's home.

{¶ 6} Jones drove to Prather's house and parked his car on the wrong side of the street in a no-parking zone immediately in front of the house. Jones pocketed a loaded gun as he got out of the car, leaving the engine running and the driver's-side door open. Neri was standing on the house's front porch when Jones arrived. The two men began walking toward each other and Neri took off his sweatshirt as he approached. Jones immediately pulled out his gun and shot Neri. Neri tried to flee but Jones fired two more shots as he was running, ultimately bringing Neri to the ground. After shooting Neri, Jones drove to the Hamilton County Sheriff's Department, where he turned himself in. Meanwhile, paramedics transported Neri to the hospital, where he died.

{¶ 7} Jones was indicted on charges of aggravated murder, murder, felony murder—each with specifications—and carrying a concealed weapon. At trial, Jones claimed that he shot Neri in self-defense, but the jury was unpersuaded and found Jones guilty on all counts in the indictment.

*B. The court of appeals reverses Jones's aggravated-murder conviction and discharges him from prosecution on that count*

{¶ 8} Jones appealed to the First District Court of Appeals, raising a number of assignments of error. Relevant to our analysis here, Jones argued that his conviction for aggravated murder was not supported by sufficient evidence,

because the evidence adduced at trial did not prove that he had acted with prior calculation and design. 2020-Ohio-281, 151 N.E.3d 1059, ¶ 9. A majority of the appellate panel agreed, finding that the evidence showed that Jones purposely killed Neri but did not establish that Jones did so after engaging "in a studied consideration of the method, means, or location of the killing." *Id*. at ¶ 16.

{¶ 9} In reaching its decision, the court of appeals assessed the evidence using the three guideposts for examining prior calculation and design that this court set out in *State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997). The *Taylor* framework asks: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or 'an almost instantaneous eruption of events'?" *Id*., quoting *State v. Jenkins*, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).

{¶ 10} Although the court of appeals found that Jones and Neri had a strained relationship, 2020-Ohio-281, 151 N.E.3d 1059, at ¶ 14, it concluded that the remaining evidence did not support a finding of prior calculation and design under *Taylor*. First, it determined the text messages between Jones and Neri showed that the men had planned to meet for a fistfight away from Prather's home when Jones was scheduled to pick up his child. Thus, Jones did not expect Neri to be present when he arrived at Prather's home and it "defie[d] logic" for the jury to find that Jones planned to kill Neri at that location "with witnesses around and his child present." *Id*. at ¶ 21. Second, the court of appeals construed Jones's choice to pocket his loaded firearm as he left his vehicle as indicating only "instantaneous deliberation" and not a design to kill Neri. *Id*. at ¶ 23. It rationalized this conclusion by noting that Jones frequently carried a weapon and had once had a gun stolen from his car. *Id.* Third, the court reasoned a jury could not infer prior calculation and design from the evidence establishing that Jones arrived at Prather's house,

shot Neri, and drove away to turn himself in, because the shooting took place in a matter of minutes and showed only Jones's anger in the moment. *Id*. at ¶ 24.

**{¶ 11}** As a result of this appraisal of the evidence, the First District reversed Jones's conviction for aggravated murder. *Id*. at ¶ 26, 81. Because the double-jeopardy protection bars retrial when a conviction has been reversed for insufficient evidence, *see State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 47, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the court of appeals discharged Jones from further prosecution on the aggravated-murder count. *Id*. at ¶ 81.

**{¶ 12}** One judge wrote in dissent, reasoning that a rational trier of fact could find that the evidence—when viewed in the light most favorable to the prosecution—established that Jones acted with prior calculation and design. In particular, Jones's role in planning the fistfight, his decision to leave his car running and the driver's-side door open, and his choice to bring a firearm with him when exiting his vehicle all supported the jury's verdict. *Id*. at ¶ 83-90 (Bergeron, J., concurring in part and dissenting in part).

**{¶ 13}** As to the other assignments of error raised by Jones, the majority of the appellate panel concluded that the trial court had made several evidentiary errors and that those errors were not harmless. 2020-Ohio-281, 151 N.E.3d 1059, at ¶ 28-58, 68-80. Consequently, it reversed Jones's convictions for murder and felony murder and remanded the case for a new trial on these counts. The court of appeals affirmed Jones's conviction for carrying a concealed weapon. *Id*. at ¶ 81.

**{¶ 14}** The state appealed the First District's reversal of Jones's aggravated-murder conviction, and we accepted jurisdiction. 159 Ohio St.3d 1413, 2020-Ohio-3275, 147 N.E.3d 655.

## II. Analysis

**{¶ 15}** The state raises several propositions of law, all of which can be distilled into a single question: did the state present evidence of prior calculation

and design sufficient to support Jones's conviction for aggravated murder under R.C. 2903.01(A)? Reviewing the record and applying the appropriate standard of review, we conclude that the state met its burden and that the First District erred in reversing Jones's aggravated-murder conviction.

### A. Sufficiency of the evidence and prior calculation and design

{¶ 16} An appellate court's task when reviewing whether sufficient evidence supports a defendant's conviction is well-settled and familiar. The reviewing court asks whether " 'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4. But it is worth remembering what is not part of the court's role when conducting a sufficiency review. It falls to the trier of fact to " 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *McFarland* at ¶ 24, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Instead, it asks whether the evidence against a defendant, *if believed*, supports the conviction. *Thompkins* at 390 (Cook, J., concurring).

{¶ 17} Here, the state charged Jones with aggravated murder under R.C. 2903.01(A), which requires the state to prove Jones caused Neri's death "purposely, and with prior calculation and design." In construing this element, we have held that the statute's own terms "suggest[] advance reasoning to formulate the purpose

6

to kill." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 18. It is not enough for the state to show that Jones purposely killed Neri. Rather, the state needs to provide "evidence of a premeditated decision or a studied consideration of the method and the means to cause a death." *Id.* There is no bright-line test for determining whether a defendant's actions show a premeditated decision or studied consideration to kill—each case turns on its own facts. *Id.* at ¶ 19. And the three factors set out in *Taylor* help guide a court's inquiry. *See State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 56 (describing the questions posed in *Taylor* as pertinent considerations when determining the existence of prior calculation and design). But the *Taylor* factors are not dispositive. Rather, a trier of fact's finding of prior calculation and design is warranted when the evidence shows a defendant had the time and opportunity to plan a homicide and the homicide's circumstances " 'show a scheme designed to implement the calculated decision to kill.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 148, quoting *State v. Cotton*, 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph three of the syllabus.

*B. A reasonable jury could infer from the evidence presented at trial*
*that Jones acted with advance reasoning to formulate the purpose to kill Neri*

{¶ 18} When these principles are read together, they refine the question facing us in this appeal: could a reasonable juror—believing the state's evidence and drawing all reasonable inferences in the state's favor—find beyond a reasonable doubt that Jones acted with advance reasoning to formulate a purpose to kill Neri? Reviewing the evidence presented at trial in a light most favorable to the state, we conclude that a reasonable juror could make such a finding here. And applying the *Taylor* framework helps make that clear.

{¶ 19} As to the first *Taylor* guidepost—whether the accused knew the victim and whether their relationship was strained, 78 Ohio St.3d at 19, 676 N.E.2d 81—the answer is an unequivocal yes. Indeed, "strained" is an understatement.

{¶ 20} The second inquiry we found relevant in *Taylor* is whether "the accused [gave] thought or preparation to choosing the murder weapon or murder site?" *Id.* A reasonable juror could easily find that Jones considered the murder's location. He rescheduled his planned fistfight with Neri to occur up the street from Prather's house at the same time he was to pick up his child. Next, on his arrival at Prather's house, Jones parked his car immediately in front of the house, on the wrong side of the street in a no-parking zone, leaving the vehicle's engine running and its driver's-side door open. And then Jones took several steps toward Neri before opening fire.

{¶ 21} Our reasoning in *Taylor* shows why these facts can support a juror's finding of prior calculation and design. *Id.* at 20-21. In that case, Taylor was convicted of aggravated murder for shooting his girlfriend's ex-boyfriend after the two men exchanged words while out at a bar. *Id.* at 15-17. In affirming his conviction, we adopted the court of appeals' assessment that Taylor's decision to wait until after his girlfriend had left the bar and his companion had positioned himself behind the victim before he began shooting were strategic choices that allowed the jury to infer that Taylor had planned to shoot the victim. *Id.* at 21. And, given that inference, there was enough evidence to prove prior calculation and design.

{¶ 22} So too here. The evidence shows that Jones and Neri planned a confrontation for that evening, that Jones contacted Prather several times to confirm the pick-up time and location, and that when he arrived, Jones parked in a no-parking zone on the wrong side of the road and kept his car running with its door open. Taken together, a jury could reasonably infer from this evidence that Jones (1) knew or expected Neri to be close by when he arrived and (2) made strategic choices that would assist in the perpetration of his crime. These inferences support the jury's finding that Jones planned to kill Neri and that he acted with prior calculation and design.

{¶ 23} A reasonable juror could also find that Jones gave thought to the choice of the murder weapon. *See Taylor*, 78 Ohio St.3d at 19, 676 N.E.2d 82. Such was the case in *Taylor*, in which we rejected the defendant's argument that the evidence showed only instantaneous deliberation. *Id*. at 22. Instead, we reasoned that the jury could infer an intent to kill from the defendant's choice to bring the firearm into the bar that he knew the victim frequented. *Id*. We came to a similar conclusion in *State v. Palmer*, 80 Ohio St.3d 543, 568, 687 N.E.2d 685 (1997). In that case, the defendant was involved in a car accident. An argument ensued, and the defendant shot and killed the driver of the other vehicle. Despite the speed with which the killing occurred, we held that the evidence, which showed that the defendant had exited his vehicle with a cocked and loaded firearm ready to fire, allowed the jury to infer that the defendant intended to use the weapon. *Id*.

{¶ 24} The facts here support the same reasoning. Jones and Neri had planned a fistfight for the evening of the shooting and the jury could infer that Jones expected to find Neri nearby—if not at—Prather's house. Then, when Jones arrived at Prather's house, he pocketed a loaded firearm as he got out of his car. Jones correctly argues that mere possession of a firearm is not enough to establish prior calculation and design. *See State v. Johnson*, 10th Dist. Franklin No. 97APA03-315, 1998 Ohio App. LEXIS 2069, *16 (May 5, 1998). But the facts here show more than Jones's simply having a firearm that he regularly carried on his person when he encountered Neri. Rather, the evidence showed an affirmative choice by Jones to bring a loaded gun to a fistfight and, when he arrived, to stuff the gun in his pocket. A jury could infer from these facts that Jones intended to use the gun. And such an inference would support the jury's finding that Jones formed a plan to kill Neri and sought to bring that plan to fruition. *See Palmer* at 569.

{¶ 25} The third *Taylor* guidepost asks, "[W]as the act drawn out or 'an almost instantaneous eruption of events'?" *Id*., 78 Ohio St.3d at 19, 676 N.E.2d 82, quoting *Jenkins*, 48 Ohio App.2d at 102, 355 N.E.2d 825. In the past we have held

that evidence of a defendant "[p]ursuing and killing a fleeing or incapacitated victim after an initial confrontation strongly indicates prior calculation and design." *Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, at ¶ 22, citing *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 442 N.E.2d 996, ¶ 45. Here, the evidence showed that Jones shot Neri once and then continued to fire at him as he ran away. Under the principle restated in *Walker*, these facts support the jury's finding of prior calculation and design.

{¶ 26} That Jones's decisions and actions occurred over a short time does not preclude a finding of prior calculation and design. We have consistently held that a defendant can conceive and execute a plan to kill, even if formulated within a few minutes, when there is evidence that the defendant's actions "went beyond a momentary impulse and show that he was determined to complete a course of action." *Conway* at ¶ 46; *see also Palmer*, 80 Ohio St.3d at 568, 687 N.E.2d 685. Without a doubt, the events here took place in short order. But no matter how quickly the shooting happened, a juror could reasonably infer from Jones's actions before and during the shooting—including Jones's planning of the fistfight, his communications with Prather confirming the time and location to pick up their child, his decision to pull in front of the house leaving the driver's door open, his decision to pocket a loaded firearm, and his choice to shoot Neri as he fled—that Jones had adopted and carried out a plan to kill. *Id.*

{¶ 27} This does not mean that the evidence precludes any other inferences. But on a sufficiency review, the evidence need not satisfy so high a burden. "Where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder." *Jenks*, 61 Ohio St.3d at 279, 574 N.E.2d 492. And therein lies the problem with the court of appeals' judgment. In reversing Jones's conviction, the court of appeals found it illogical to infer that Jones planned to kill Neri at Prather's home because

other evidence showed that Jones had planned to meet Neri up the street. It discounted evidence establishing that Jones chose to pocket his firearm as he exited his car because other evidence suggested that Jones might have had other reasons to carry a firearm. And it concluded that the jury could not have inferred prior calculation and design because of the brevity of the shooting. In sum, the court of appeals conducted its own assessment of the evidence and drew the inferences it found most persuasive, rather than crediting the state's evidence and drawing all reasonable inferences in the state's favor. Such an analysis is more like a manifest-weight review than a sufficiency analysis. *See State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. And it was an inappropriate basis to reverse Jones's conviction for insufficient evidence.

### C. *We remand the case to the trial court for a new trial*

{¶ 28} In addition to finding that there was insufficient evidence to convict Jones of aggravated murder, the court of appeals concluded that Jones was deprived of his right to a fair trial based on several evidentiary errors and remanded the case for a new trial on the murder and felony-murder charges. The state did not appeal that part of the court of appeals' judgment, and so the decision on those issues stands.

{¶ 29} The court of appeals' determination that the trial court committed evidentiary errors prejudicial to Jones applies equally to Jones's conviction for aggravated murder. And our decision today reversing the appellate court's sufficiency finding means that Jones can also be retried on the aggravated-murder charge.

{¶ 30} The court of appeals did not reach an assignment of error arguing that Jones's aggravated-murder conviction was against the manifest weight of the evidence. But unlike a reversal for insufficient evidence, which requires the discharge of the defendant, the remedy for a reversal on manifest-weight grounds is a new trial. *State v. Fips*, 160 Ohio St.3d 348, 2020-Ohio-1449, 157 N.E.3d 680,

¶ 8-10. Because the court of appeals' resolution of other assignments of error already requires a new trial on the three murder counts, there is no need to remand to the court of appeals for consideration of Jones's manifest-weight challenge.

{¶ 31} We remand the case to the trial court for a new trial on the aggravated-murder, murder, and felony-murder charges. Jones did not appeal the court of appeals' judgment affirming his conviction for carrying a concealed weapon, so his conviction for that offense is unaffected by our decision today.

### III. Conclusion

{¶ 32} We reverse in part the judgment of the First District Court of Appeals and remand the case to the trial court for a new trial on the aggravated-murder, murder, and felony-murder charges.

Judgment reversed in part

and cause remanded to the trial court.

O'CONNOR, C.J., and KENNEDY, J., concur.

FISCHER, J., concurs in judgment only.

DONNELLY, J., dissents, with an opinion joined by BRUNNER, J.

STEWART, J., would dismiss the appeal as having been improvidently accepted.

_____

**DONNELLY, J., dissenting.**

{¶ 33} This court should not have accepted jurisdiction over this case. *See* Ohio Constitution, Article IV, Section 2(B)(2)(e); *State v. Noling*, 136 Ohio St.3d 162, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 63 (O'Donnell, J., dissenting) ("we are not an error-correcting court; rather, our role as the court of last resort is to clarify confusing constitutional questions, resolve uncertainties in the law, and address issues of public or great general interest"). Appellant state of Ohio's propositions of law and the lead opinion's analysis involve nothing more than applying settled law. Correcting a perceived legal error is not something we should do. Moreover,

instead of providing guidance to the bench and bar, the lead opinion raises more questions than it answers.

{¶ 34} It is important to remember that this case involves a death. Kevin Neri was killed, and if it proves to be the case that it was without justifiable cause, his killer should be punished. The state has alleged that appellee, Earl Jones, was the shooter, and if the charge of murder is proved beyond a reasonable doubt on remand, he should be held fully accountable for the crime and sentenced accordingly.

{¶ 35} First, the lead opinion rightly relies on the well-known, if incredibly deferential, standard that governs a reviewing court's analysis of whether sufficient evidence was presented at trial: a reviewing court must consider whether " 'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4. I dissented in *McFarland* because there was a paucity of evidence to support a finding of the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 54-90. The same lack of evidence undermines the lead opinion here, despite the remarkably low threshold required.

{¶ 36} Second, even a giant spotlight shining on the evidence in the state's favor fails to reveal the essential elements of the offense. If intent to kill can be inferred from the facts in this case, what fact can't intent be inferred from? The sad truth is that Jones may indeed have shot Neri, but even so, that does not mean that every action he took supports an inference of "advance reasoning to formulate a purpose to kill." Lead opinion at ¶ 18. As proof of Jones's advance reasoning, the lead opinion points out that Jones had "parked his car immediately in front of the

house, on the wrong side of the street in a no-parking zone, leaving the vehicle's engine running and its driver's-side door open," *id.* at ¶ 20. The lead opinion adds that "Jones took several steps toward Neri before opening fire." *Id.* at ¶ 20. Taking several steps toward the house from which he was scheduled to pick up his child is not indicative of an intent to kill—unless you know that he had killed someone. These inferences are just too easy and are hopelessly enmeshed with the allegation that Jones killed Neri. Looking only at the facts, without reference to what happened after, there is insufficient evidence of "advance reasoning" to kill. But now we are left with ample reason for parents in a shared-custody arrangement to be wary of parking on the wrong side of the road or in a no-parking zone—because that act could result in an inference of intent if a crime occurs.

{¶ 37} Finally, how does the lead opinion square the inference of intent to use a firearm with the right to bear arms? *See* Ohio Constitution, Article I, Section 4; Second Amendment to the U.S. Constitution. Does merely carrying a gun—an act that is protected by both the state and federal Constitutions—allow a jury to infer the intention to use a firearm? This inference alone is problematic. According to the Ohio attorney general, in 2020, county sheriffs in Ohio issued 169,232 concealed carry licenses. https://www.ohioattorneygeneral.gov/Files/Reports/Concealed-Carry-Annual-Reports-(PDF)/2020-CCW-Annual-Report (accessed Sept. 1, 2021) [https://perma.cc/7FEJ-K2S8]. Does this mean that all those Ohioans who just last year received licenses to carry a firearm intend to use their firearm every time they lawfully carry a concealed weapon?

{¶ 38} We should not have accepted jurisdiction over this case. I did not vote to accept this appeal, 159 Ohio St.3d 1413, 2020-Ohio-3275, 147 N.E.3d 655, because I did not believe that it presented a significant constitutional question, an uncertainty in the law, or an issue of public or great general interest. In my view, this appeal involved the simple application of settled standards and thus asked this court for error correction, if indeed you perceive the appellate court's decision to

be erroneous, which I do not. "Now that I have had the opportunity to review the record with the benefit of full briefing, that conclusion seems all the more clear." *Anderson v. WBNS-TV, Inc*, 158 Ohio St.3d 307, 2019-Ohio-5196, 141 N.E.3d 192, ¶ 16 (DeWine, J., concurring in judgment only). We should dismiss this case as having been improvidently accepted. I therefore dissent.

BRUNNER, J., concurs in the foregoing opinion.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Peter Galyardt, Assistant Public Defender, for appellee.

_____