[Cite as *State v. Chandler*, 2023-Ohio-3476.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112292 |
| v. | : | |
| PORSHE CHANDLER, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 28, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-671895-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Kenan Mack, Assistant Prosecuting
Attorney, *for appellee*.

Buckeye Law Office and Craig W. Smotzer, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Porshe Chandler ("Chandler"), appeals her convictions for aggravated robbery, theft, and grand theft, challenging the

sufficiency and manifest weight of the evidence. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} In June 2022, Chandler was charged with a nine-count indictment. Counts 1 and 2 charged her with aggravated robbery. Counts 3-5 charged her with robbery. Counts 6 and 7 charged her with felonious assault. Counts 8 and 9 charged her with grand theft. Each of Counts 1-9 carried a one-year firearm specification. The charges stem from an incident during which Chandler challenged the victim, Briana Tate ("Tate"), to a fist fight.

{¶ 3} The matter proceeded to a jury trial, at which the following evidence was adduced.

{¶ 4} Tate testified that she and Chandler dated on-and-off for two years. Tate described their relationship as tumultuous. Tate testified that Chandler and her were in an argument prior to June 6, 2022, which is the date of their physical altercation. Chandler messaged Tate at 3:00 a.m. that morning, challenging her to a fight outside her house. Tate did not accept the challenge, responding to Chandler that she was in bed and would not be leaving her house until she had to go to work at 6:00 a.m. that morning. Around this time, Chandler began messaging her with a different Instagram account to come outside. Tate testified that Chandler was using a different account because she had blocked Chandler's account.

{¶ 5} Tate left her house that morning with her two children intending to drop them off at day care. Tate testified that Chandler was waiting for her outside

with a group of people in a car. Chandler was driving her car around Tate and her children as they walked to Tate's car challenging Tate to fight. Chandler stated to Tate, "'I want to fight. I want to fight. I want to fight.'" (Tr. 238.) Tate brandished her handgun to keep Chandler at a distance as she loaded her children in the car. Chandler left the scene once Tate and her children were in her vehicle. This interaction was captured on video.

{¶ 6} Tate received a phone call from her neighbor while she dropped her children at daycare, which prompted her to return home. Tate returned home to find that the windows of her home were broken. Tate called Chandler and asked "what is the problem." (Tr. 245.) Chandler responded, "'I just want to fight you. I just want to fight you. You pulled out a gun. I want to fight you, what is so wrong with fighting?'" (Tr. 245.) Tate was so frustrated with the situation that she agreed to meet Chandler on West 28th Street in Cleveland to fight. Tate drove there in her white Ford Fusion.[1]

{¶ 7} When Tate arrived, Chandler was already standing in the middle of the street. Tate walked up to Chandler and said, "I don't even want to fight you." (Tr. 248.) Chandler, who was standing in a fighting stance, threw a punch at Tate and the two began to fight. The two fought with each other for about a minute before Chandler's friends and family broke up the fight by pulling Tate and Chandler apart. Chandler's cousin recorded the fight with her cell phone.

---

[1] Selethia O'Neal testified that she owns the Ford Fusion and she only gave Tate permission to use it.

{¶ 8} Once Chandler and Tate were separated, Chandler walked over to Tate's car and "jumped right into [Tate's] car." (Tr. 251.) Tate left her keys in the car and the doors were unlocked. Chandler locked the doors after she entered Tate's car. Tate, knowing that "[e]verything [she] owned was in the car when [Chandler] got in the car, including the car itself," got onto the hood of the car in an attempt to stop Chandler. (Tr. 259.) Tate had her car keys, house keys, gun, phone, wallet, and purse in the car. Tate told Chandler, "'[G]et out of my car, you're doing too much. Get out of my car.'" (Tr. 259.) Chandler "look[ed] [her] dead in [her] face and said, 'this is what you wanted, a b***h to show you that she loved you. This is what you wanted me to do to show you that I love you and care about you.'" (Tr. 259.)

{¶ 9} Chandler then accelerated the car with Tate still on the hood. Chandler continued to drive in a loop with Tate on the hood of the car. Tate testified that she never gave Chandler permission to take any of her personal belongings or drive her car. While she sitting on the windshield, Tate turned around in an attempt to stop Chandler and punched the window. Tate testified that she "tried [t]o break the * * * top window * * * everything to me was in the car, I couldn't get into the car, she was just driving." (Tr. 268.) Tate further testified that her arm was stuck between the door as she was on the hood of the car trying to get Chandler out of the car. Tate thought her arm was going to break. Cell phone recordings of the fight and Chandler driving around with Tate on the hood of her vehicle were played for the jury.

{¶ 10} Eventually, Tate was thrown from the hood of her vehicle. She remembered "going down" and waking up with her "head busted open, mouth busted open." (Tr. 273.) Tate then remembered getting up and walking trying to find someone. She testified that "[b]lood was pouring on top of dirt, rocks, little holes in [her] arms." (Tr. 272-273.) Tate testified about the extent of her injuries, stating that she had a big gash on her head that required stitches, her lip was split open, her tooth was chipped, she had road rash on her legs, arms, and stomach, and she had holes in both knees.

{¶ 11} Tate flagged down Cleveland Police Officer Zachary Banks ("Officer Banks") who was on patrol in the area that day. Officer Banks testified that Tate was acting frantically and bleeding from the head. She appeared confused and disoriented. Officer Banks, who was a paramedic prior to becoming a police officer, believed that Tate sustained a head injury and called EMS for transport to MetroHealth Medical Center. Officer Banks's body camera system was active during the encounter, and the video of his encounter with Tate was played for the jury. Officer Banks also testified that Tate's car was found in a parking lot near West 28th.

{¶ 12} Chandler testified in her own defense. She testified that she had been angry at Tate about some videos circulating on social media, which caused their argument that prompted their fight. Chandler's testimony about the facts leading up to the incident on West 28th was consistent with Tate's testimony. The testimony diverged after Chandler and Tate were pulled apart from each other.

{¶ 13} Chandler testified that Tate came running at her with a knife in her hand, so she ran towards Tate's vehicle and got in. Chandler testified that she fought with Tate as she entered the vehicle. Chandler further testified that Tate cut her with the knife during this fight, but she never sought medical treatment. According to Chandler, Tate jumped onto the hood of the car and was trying to punch her through the window. Chandler testified that she eventually stopped the car. She exited from the passenger side of Tate's vehicle and ran toward the back of the housing projects. Chandler further testified that Tate was not thrown off of the car. Rather, Tate got off the hood of the vehicle and chased after Chandler. The two them started fighting by a stairwell. Chandler stated that Tate was "trying to push [her] down the stairs, but [she] beat [Tate] to the punch and [Tate] went down the stairs" head first. (Tr. 479.) Immediately after the incident, Chandler left for Columbus to be with her fiancé.

{¶ 14} On cross-examination, the state replayed some of the video of the incident. Chandler could not identify any footage of Tate holding a knife. Nor was there footage of the fight by the stairwell as Chandler described. While Chandler stated that the cut was deep enough to cause nerve damage, she testified that there was no blood in the car because her arm only bled into her jacket. The state also played for the jury an audio message that Chandler sent to Tate three days after the incident in which Chandler states, "'You should have just laid there and died." (Tr. 532.) When asked what she meant by that, Chandler responded, "Because when I last see [Tate], she was going down the stairs."

**{¶ 15}** Following the conclusion of trial, the jury found Chandler guilty of aggravated robbery as charged in Count 1, robbery as charged in Counts 3-5, and grand theft as charged in Count 9. The jury found her not guilty of all remaining counts and each of the accompanying one-year firearm specifications. At sentencing, all counts merged and plaintiff-appellee, the state of Ohio, elected to proceed with sentencing on Count 1 (aggravated robbery) with Counts 3, 4, 5, and 9 merging into Count 1. The court then sentenced Chandler to a minimum of four years and a maximum of 6 years in prison.

**{¶ 16}** Chandler now appeals, raising the following two assignments of error for review:

> **ASSIGNMENT OF ERROR ONE:** [Chandler's] convictions are unsupported by sufficient evidence.

> **ASSIGNMENT OF ERROR TWO:** [Chandler's] convictions are against the manifest weight of the evidence

## II. Law and Analysis

### A. Sufficiency of the Evidence

**{¶ 17}** In the first assignment of error, Chandler argues that the state failed to present sufficient evidence of the elements of the charged offenses. Specifically, Chandler claims the state failed to establish that she intended to commit a theft offense, and, as a result, her convictions must be overturned.

**{¶ 18}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when

reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A sufficiency of the evidence argument is not a factual determination, but a question of law. *Thompkins* at 386.

{¶ 20} In *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, the Ohio Supreme Court cautioned:

> But it is worth remembering what is not part of the court's role when conducting a sufficiency review. It falls to the trier of fact to "'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" [*State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 24], quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Instead, it asks whether the evidence against a defendant, if believed, supports the conviction. *Thompkins* at 390 (Cook, J., concurring).

*Id.* at ¶ 16.

{¶ 21} Here, Chandler was convicted of aggravated robbery under R.C. 2911.01(A)(1), robbery under R.C. 2911.02(A)(1)-(3), and grand theft under R.C. 2913.02(A)(1). R.C. 2911.01(A)(1) provides:

> No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * *:

> Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

R.C. 2911.02(A)(1)-(3) provides:

> No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

> (1) Have a deadly weapon on or about the offender's person or under the offender's control;

> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

> (3) Use or threaten the immediate use of force against another.

Lastly, R.C. 2913.02(A)(1) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"

{¶ 22} In support of her argument that the state failed to establish that she intended to commit a theft offense, Chandler attacks Tate's credibility. Chandler testified to a different version of events than Tate and stated that she entered Tate's car to escape an ongoing attack, not to steal the car. Chandler's credibility attack,

however, is an issue of manifest weight, not sufficiency. When the evidence is examined under a sufficiency review, it clearly supports the convictions.

{¶ 23} Tate testified that when Chandler first entered her car, she locked the door. Tate stated:

> First thing in my head, I'm like my car keys, my house keys, my gun, my phone, my money, like my wallet, my purse was in the car. Everything I owned was in the car when she got in the car, including the car itself. So I got on the car to stop the car and I told [Chandler], "Get out of my car, you're doing too much. Get out of my car."

(Tr. 259.) Chandler replied, "'This is what you wanted, a b***h to show you that she loved you. This is what you wanted me to do to show you that I love you and care about you.'" (Tr. 259.) Tate and Selethia O'Neal both testified that they never gave Chandler permission to drive the Ford Fusion. Additionally, Chandler admitted through her own testimony that she got into Tate's car and drove away while fighting with Tate, who was on the hood of the car. Officer Banks testified that the car was subsequently found in a parking lot near West 28th. This evidence, when viewed in a light most favorable to the state, establishes that Chandler committed the underlying theft offense needed to support the convictions.

{¶ 24} Therefore, the first assignment of error is overruled

**B. Manifest Weight of the Evidence**

{¶ 25} In the second assignment of error, Chandler argues that the jury lost its way because it did not properly evaluate the evidence presented at trial.

{¶ 26} When reviewing a manifest weight challenge, an appellate court, "'weighs the evidence and all reasonable inferences, considers the credibility of

witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 54, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541 (1997), quoting *Martin* at 175.

{¶ 27} As this court has previously stated:

> The criminal manifest weight-of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541 (1997). Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id*. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 2000-Ohio-276, 723 N.E.2d 1054 (2000).
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id*., quoting *Thompkins* at *id*.

*State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 86-87.

{¶ 28} Chandler argues that Tate's testimony was not convincing and Tate could have been motivated to obscure the fact that she may have turned into the aggressor after the fight initially broke up. While Chandler attacks Tate's credibility, Chandler failed to introduce other evidence to corroborate her claims. Rather, the

evidence reveals that Chandler instigated the fight, got into Tate's car, locked it, and drove away with Tate's belongings in the car, all while fighting with Tate, who was on the car hood. After reviewing the entire record, weighing the inferences, and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. Chandler's convictions are not against the manifest weight of the evidence.

{¶ 29} Thus, the second assignment of error is overruled.

## III. Conclusion

{¶ 30} Tate's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The evidence presented at trial demonstrates that Chandler instigated the fight, got into Tate's car, locked it, and proceeded to flee the scene with Tate's belongings in the car, all while fighting with Tate as she was sitting on the hood of her car.

{¶ 31} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
EMANUELLA D. GROVES, J., CONCUR