[Cite as *State v. Brown*, 2024-Ohio-440.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230034 |
| | | TRIAL NO. B-2202816 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| YAHMALE BROWN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: February 9, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *William R. Gallagher*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}   Defendant-appellant Yahmale Brown appeals his conviction, following a jury trial, for having weapons while under a disability ("WUD"). In two assignments of error, Brown argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Finding Brown's arguments to be without merit, we affirm the trial court's judgment.

## I. Factual and Procedural Background

{¶2}   On June 16, 2022, the Hamilton County Grand Jury issued an indictment charging Brown with WUD and eight drug offenses.

{¶3}   At a jury trial, Cincinnati Police Officer Aubrey Pitts testified about an investigation he conducted as part of his assignment to the Crime Gun Intelligence Unit that ultimately led to Brown's arrest. The target of the investigation was an individual named Aaron Orr, who resided at 2938 Queen City Avenue, Apartment 6. Officer Pitts believed that Orr was engaging in drug trafficking out of his apartment. On February 14, 2022, Officer Pitts conducted surveillance on Orr's residence while in plain clothes and in an unmarked police vehicle. After witnessing Orr leave the apartment in a wheelchair, get into a vehicle, and drive away, Officer Pitts effectuated a traffic stop of Orr based on outstanding warrants. Orr was arrested, and his apartment was secured to ensure that no persons entered or exited while a search warrant was obtained. Orr asserted ownership over the items in the apartment and never stated that any other persons resided there with him.

{¶4}   Officer Pitts and Officer Broering conducted the search of the apartment. Officer Broering found a social security card in Brown's name in a back room. He also found paperwork that Officer Pitts described as "a health document like

from the health department" addressed to Brown at the Queen City address. Officer Broering described the paperwork found in the back room as "parole paperwork." He confirmed that it was addressed to Brown, but did not recall whether it reflected the Queen City address. No photographs were taken of either the social security card or paperwork, and these items were not admitted at trial.

{¶5} Four firearms were recovered during the search: an American Tactical Rifle, a Hi-Point 9-mm firearm, a Taurus 1911 firearm, and a Draco Mini. All four weapons were test fired and found to be in working order. The Taurus 1911 was found in a sleeve of a couch designed to hold remotes and magazines. The Draco Mini was found on the floor of the same room where Brown's social security card was discovered, and the Hi-Point firearm was found on a closet shelf in a bedroom in the apartment. Photographs of these weapons were admitted into evidence.

{¶6} Several different drugs, including fentanyl, methamphetamine, and marijuana, were recovered during the search, along with various drug paraphernalia, including a scale. Brown's fingerprints were not found on any of the recovered drugs or weapons. After searching the apartment, Officer Pitts left a copy of the search warrant behind.

{¶7} Officer Pitts listened to recorded jail telephone calls placed by Orr and an individual named Ravea Barron, who was also arrested as a result of the investigation into Orr. From listening to these calls, Officer Pitts gleaned a phone number that he linked to Brown, and he subsequently pulled and listened to calls between Orr and Brown.

{¶8} Several of these calls were played for the jury. Officer Pitts identified the voices on the calls as belonging to Orr and Brown. Brown can be heard in the calls

3

referencing the search warrant that Officer Pitts left at the apartment. The calls also reflected a discussion between Brown and Orr about the placement of the Taurus 1911 in the sleeve of the couch. During one of the calls, Orr mentioned leaving the apartment in a wheelchair, prompting Brown to ask Orr how much later he left the apartment after Brown. Orr responded "20 or 30 minutes." The calls also contained a reference to the paperwork that Officer Broering found.

{¶9} After developing Brown as a suspect, Officer Pitts conducted surveillance on Brown for approximately three months. At no time during either Officer Pitts's surveillance of Brown or his surveillance of the Queen City apartment prior to Orr's arrest was Brown seen at the apartment.

{¶10} During his investigation, Officer Pitts obtained several photographs from a social-media account belonging to Brown. One photograph depicted Brown with three firearms in his possession on the balcony of the Queen City apartment. According to Officer Pitts, "[t]he one in his right hand appears to be the Draco Mini that was recovered, and in his left hand is another firearm. I can't tell which one that one is for sure. And then in his left-hand pocket, there's another firearm that appears to be a handgun." Officer Pitts further stated that he believed the "AR" found during execution of the search warrant was one of the weapons in the picture, but he "would have to double-check." He later stated that he recognized the guns in the photograph of Brown and that they were three of the weapons recovered from the apartment. Another photograph depicted Orr and Brown together. In it, Orr held currency in multiple denominations and Brown held a blunt.

4

**{¶11}** The jury acquitted Brown of all eight drug charges but found him guilty of WUD.[1] The trial court sentenced Brown to three years of imprisonment.

## II. Sufficiency and Weight of the Evidence

**{¶12}** In his first assignment of error, Brown argues that his conviction was against the manifest weight of the evidence. In his second assignment of error, he argues that his conviction was not supported by sufficient evidence. We address these arguments together.

**{¶13}** When reviewing a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4. The court's role is to ask "whether the evidence against a defendant, *if believed*, supports the conviction." (Emphasis sic.) *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16.

**{¶14}** A challenge to the manifest weight of the evidence, on the other hand, requires this court to "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No.

---

[1] Although the state presented evidence that four firearms were found in the apartment, it was only required to prove that Brown possessed one of the firearms to support the WUD conviction.

C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶15}** Brown was found guilty of WUD in violation of R.C. 2923.13(A)(2). This statute provides, as relevant to Brown, that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." R.C. 2923.13(A)(2).

**{¶16}** The indictment alleged that Brown committed the WUD offense on or about February 14, 2022, while he was under disability for a robbery adjudication. Brown stipulated at trial that he was under disability on the date of the offense alleged in the indictment.

**{¶17}** Brown argues that the sufficiency and weight of the evidence fail to establish that he possessed a firearm on or about February 14, 2022. A WUD conviction can be based on actual or constructive possession. *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 14 (1st Dist.), quoting *State v. English*, 1st Dist. Hamilton No. C-080827, 2010-Ohio-1759, ¶ 31 ("To 'have' a firearm within the meaning of the weapons-under-a-disability statute, the offender must actually or constructively possess it."); *State v. Morris*, 1st Dist. Hamilton Nos. C-220651 and C-220652, 2023-Ohio-4622, ¶ 28 (the jurisprudence on constructive possession is the same for the offense of WUD as it is for drug-possession offenses).

**{¶18}** Brown contends that the state waived its right to argue on appeal that he constructively possessed a weapon because it failed to argue a theory of constructive possession at trial and did not request a jury instruction on constructive possession.

We do not view the state's argument in the trial court with respect to Brown's possession of a weapon so narrowly.

{¶19} Brown is correct that the trial judge did not instruct the jury on constructive possession regarding the WUD charge. Rather, the judge instructed the jury that it had to find that Brown "knowingly acquired, had, carried, or used" a firearm on or about the date alleged. Nevertheless, Brown was not found in actual possession of any of the weapons recovered from the apartment. The state, therefore, could only have proceeded under a theory of constructive possession with respect to those weapons.

{¶20} In response to a Crim.R. 29 motion made by Brown challenging the lack of evidence establishing his connection to the drugs and weapons found in the apartment, the state did not limit itself to a theory of actual possession. The state argued that:

> [H]e is living in the apartment, photographed with the guns. He is photographed with money, indicias [sic] of drug trafficking. There is a jail call where he indicates that he left 20 to 30 minutes prior to Mr. [Orr] leaving the apartment and Mr. [Orr]'s arrest.
>
> So we have him placing himself with—looking at the evidence in the light most favorable to the prosecution, that this is Mr. Brown on these jail calls and Mr. Brown putting himself in the apartment.
>
> We also have the testimony from the officers, in the light most favorable to the prosecution, about his personal paperwork, and I'll note that one of [those] piece[s] of paperwork was his Social Security card * * *.

{¶21} The state's closing argument likewise argued to the jury that the telephone calls between Brown and Orr established that Brown was living in the apartment, as did the fact that Brown's social security card was found in the apartment.

{¶22} On this record, we hold that the state did not fail to argue a theory of constructive possession during trial, and that it is not prohibited from making a constructive-possession argument on appeal.

{¶23} Constructive possession is established where "the defendant exercised dominion and control over an item, even though the item was not within his immediate physical possession." *State v. Jackson*, 1st Dist. Hamilton No. C-110570, 2012-Ohio-2727, ¶ 14. It "may be inferred where the defendant has control and dominion over the premises and is aware that the item is on those premises." *Id.* Dominion and control, as well as whether a person was conscious of the presence of a weapon, may be proven by circumstantial evidence. *Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, at ¶ 15. This court has held that "constructive possession may be established even where the defendant shares an apartment with another, if the items are found in the defendant's living area and in plain view throughout the premises." *Jackson* at ¶ 14.

{¶24} The evidence presented at trial established that Brown's social security card and paperwork in his name were found in a room in the apartment where one of the guns was recovered; that a photograph on Brown's social media depicted him holding three weapons on the balcony of the apartment; that Officer Pitts testified that one of the weapons in the photograph appeared to be the same weapon found in the room containing Brown's personal documents; and that Brown and Orr, in recorded

8

jail calls, discussed the location of the Taurus 1911, the fact that Brown left the apartment approximately 20 to 30 minutes prior to Orr on the day of Orr's arrest and execution of the search warrant, and that Brown was aware that a copy of the search warrant had been left in the apartment.

{¶25} Viewed in the light most favorable to the prosecution, *see Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, at ¶ 12, this evidence was sufficient to establish that Brown constructively possessed at least one of the four weapons in the apartment and that he "knowingly acquired, had, carried, or used" at least one of the four weapons on or about February 14, 2022. The photograph of Brown with weapons, one of which the officer believed looked like the Draco Mini found in the room where Brown's social security card and paperwork were found, and Brown's statements in the recorded jail calls established that he had been staying at the apartment, had been there on February 14, 2022, and that he had control and dominion over the premises and was aware of at least one of the weapons in the apartment. *See Jackson*, 1st Dist. Hamilton No. C-110570, 2012-Ohio-2727, at ¶ 14.

{¶26} Brown makes much of the fact that the photograph of him holding the weapons was not dated. He contends that this photograph taken "on some undetermined date" was the only evidence of possession. We disagree. Brown's WUD conviction was based on his constructive possession of the weapons found in the apartment, not his actual possession of the weapons in the photograph. While the photograph was not dated, other evidence presented at trial, as set forth above, placed Brown in the apartment and linked him to the weapons on the date alleged in the indictment.

**{¶27}** The facts of this case are similar to those in *State v. Munn*, 6th Dist. Lucas No. L-08-1363, 2009-Ohio-5879. In *Munn*, the court upheld a WUD conviction based on constructive possession where the evidence established that defendant had been seen at the residence where the weapons at issue were found and either lived or stored his belongings there, the weapons were discovered in a bedroom among men's clothing and shoes, and personal paperwork and a birth certificate for defendant were found in the bedroom and in the residence. *Id.* at ¶ 48.

**{¶28}** Brown additionally argues that the state failed to establish that "what he was alleged to have possessed" was a firearm pursuant to R.C. 2923.11(B), which defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." This argument is without merit. Officer Pitts testified that all four of the weapons found in the apartment were test fired and found to be in working order.

**{¶29}** We accordingly hold that Brown's conviction for WUD was supported by sufficient evidence.

**{¶30}** Brown's conviction was also supported by the manifest weight of the evidence. While the jury heard testimony that the officers never saw Brown at the apartment while they were conducting surveillance, Brown's own statements in the recorded jail calls established that he had been in the apartment both on the day that the search warrant was executed and sometime subsequent thereto, as evidenced by his discussion regarding the copy of the search warrant that was left behind. And although Brown's DNA was not found on any of the recovered weapons, other evidence was presented linking Brown to those weapons. This evidence included testimony that one of the weapons was found in the same room as Brown's social security card and

10

paperwork, Brown's discussion of the weapons' placement in the apartment, and the photograph depicting Brown holding three weapons on the balcony of the apartment.

{¶31}  The jury, as the trier of fact, was in the best position to determine what weight to give the evidence and to judge the credibility of the witnesses. *State v. Loudermilk*, 2017-Ohio-7378, 96 N.E.3d 1037, ¶ 6 (1st Dist.); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This was not the rare case in which the jury lost its way and committed a manifest miscarriage of justice in convicting Brown. *See Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, at ¶ 16.

{¶32}  Brown's conviction for WUD was supported by the both the sufficiency and the weight of the evidence. The first and second assignments of error are overruled.

### III. Conclusion

{¶33}  Having overruled Brown's assignments of error, we accordingly affirm the trial court's judgment convicting him of WUD.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.