[Cite as *State v. Morris*, 2023-Ohio-4622.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-220651 |
| | | C-220652 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-2202075 |
| | | B-2005829 |
| vs. | : | |
| DAESHAUN MORRIS, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: December 20, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*William F. Oswall, Jr.*, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1} Defendant-appellant Daeshaun Morris was convicted following a bench trial for having a weapon while under disability ("WUD") and for possession of heroin, a fentanyl-related compound, and cocaine. In this appeal, Morris argues that he was prejudiced by ineffective assistance of counsel, that his convictions were based on insufficient evidence and were against the manifest weight of the evidence, and that the court failed to make the required findings before imposing consecutive sentences. For the following reasons, we remand the cause for the trial court to correct its sentencing entry, but we affirm the judgment of the trial court in all other respects.

### I. Factual and Procedural History

{¶2} Police were called to Morris's apartment in April 2022 in response to a report of a woman, K.M., being assaulted. Responding officers met K.M. outside the apartment before she was transported to the hospital via ambulance. The officers found Morris at the apartment and placed him under arrest. A protective sweep of the apartment revealed no other occupants, but the officers saw signs of a struggle: various items had been thrown about, a chair was overturned in the kitchen, and there were drops of blood on the kitchen floor. Several of the apartment's windows had also been broken.

{¶3} Following an interview with Morris about the alleged assault, police obtained a search warrant for the apartment. While executing the warrant, officers found a handgun in plain view on the couch in the living room. Officers also found two baggies containing substances appearing to be illegal drugs, along with a scale, in the pocket of a man's jean jacket that was hanging in the bedroom closet. The contents of the baggies were later determined to be approximately 7.5 grams of a mixture of

2

heroin, fentanyl, and cocaine, and approximately 8.5 grams of cocaine. The scale was also found to have residue of heroin and cocaine on it.

{¶4} Morris was charged with possession of cocaine under R.C. 2925.11(A), a fourth-degree felony; possession of heroin under R.C. 2925.11(A), a third-degree felony; and possession of a fentanyl-related compound under R.C. 2925.11(A), a third-degree felony. Because Morris had been previously convicted of a felony, he was charged with WUD under R.C. 2923.13(A)(3), a third-degree felony. Morris pled not guilty to the charges, waived his right to a jury trial, and tried his case to the bench.

{¶5} At trial, the state presented evidence that Morris had denied that the apartment was his primary residence but acknowledged that he stayed there. The state introduced into evidence photographs of a receipt showing Morris's name and the apartment's address, as well as a piece of mail addressed to Morris at the apartment's address. Witnesses for the state testified that the apartment consisted of a combined living room and kitchen, one bathroom, and one bedroom. They also testified that the appearance of the apartment was consistent with one person living there, that the bedroom closet contained only what appeared to be men's clothing, and that the bedroom did not contain any articles suggesting that a woman lived there.

{¶6} Morris called K.M. to testify on his behalf. K.M. confirmed that she was with Morris on the date of his arrest. When asked if she had drugs with her that day or had brought drugs to Morris's apartment, K.M. asserted her privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

{¶7} Morris testified in his own defense. Morris denied that the drugs or gun belonged to him and alleged that they belonged to K.M. Morris testified that he had not seen the pistol that was recovered in plain view on his couch. He testified that a

3

set of keys visible in the evidence photo of the gun on his couch did not belong to him. Morris also denied that the jean jacket belonged to him. Morris testified that K.M. lived in the apartment with him and that they were in a secret relationship because K.M. was married to another man. Morris further testified that "a lot of people" had been in the apartment because Morris permitted the use of the apartment as a "hangout spot" where people "in a relationship that may not be publicized" might come to have sex. Morris also testified that K.M. had kicked out the windows of the apartment after the two had gotten into an argument on the day he was arrested.

{¶8}    In closing, the state argued that Morris constructively possessed all the contraband—the drugs and the firearm—found in the apartment, and that Morris acknowledged the apartment was his. The state claimed that the testimony of the investigating officers pointed to a single, male occupant of the apartment, and Morris is that person. The state also argued that Morris was not credible, particularly when he denied having ever seen the handgun that was sitting in plain view on his couch.

{¶9}    Morris's attorney argued that Morris had perhaps not seen the pistol on the couch because the situation in the apartment was so chaotic around the time that police were called and K.M. left: the windows had been broken out, K.M. was screaming at Morris, and then the police showed up to arrest him. Defense counsel also argued that there was no DNA or fingerprint evidence to connect Morris to the contraband. Counsel suggested that the jacket and its contents may have belonged to one of the innumerable other people who frequented the apartment. Counsel stated regarding K.M.'s testimony: "Why not just tell the truth? Was it or was it not yours? That being the narcotics and the weapon? We'll never know that because [K.M.] invoked her Fifth Amendment right." Later, counsel argued, "At the end of the day, the

4

Court has to balance all of the evidence, look at the credibility of the witnesses, ask yourself why this young lady took the Fifth."

{¶10}  The court found Morris guilty of all counts. The court noted that it did not consider K.M.'s invocation of her Fifth Amendment right, citing *State v. Hayley*, 8th Dist. Cuyahoga No. 74718, 1999 Ohio App. LEXIS 5679, 27 (Dec. 2, 1999) (the finder of fact "simply may not consider invocation of the privilege against self-incrimination for any purpose.").

{¶11}  At sentencing, the trial court merged the counts for possession of heroin and a fentanyl-related compound. It then sentenced Morris to 18 months on the WUD count, 9 months on the fentanyl-related-compound count, and 6 months on the cocaine count in the case numbered B-2202075. The court set the sentences to run concurrently. Additionally, Morris pled guilty to a community-control violation in the case numbered B-2005829, an earlier WUD conviction in which he received a three-year community-control sanction. The court sentenced Morris to 12 months on the community-control violation, set to run consecutively to the aggregate sentence in the drug-possession and WUD case. In sum, the court sentenced Morris to 30 months of incarceration.

{¶12}  The judgment entry of the sentence in the community-control-violation case states that the sentence is to run consecutively to the sentence in the drug-possession and WUD case. However, the judgment entry does not state any of the factual findings relevant to the imposition of consecutive sentences.

{¶13}  This appeal timely followed.

## II. Analysis

{¶14}  Morris presents four assignments of error for our review. Morris argues

5

in his first assignment of error that his counsel was constitutionally deficient for admitting his guilt to the trier of fact and for failing to cross-examine the state's witnesses. Morris argues in his second and third assignments of error that his convictions are based on insufficient evidence and are against the manifest weight of the evidence because the state failed to prove his possession of the contraband. Finally, Morris argues in his fourth assignment of error that the court failed to make the required findings before imposing consecutive sentences.

### A. *Ineffective Assistance of Counsel*

{¶15} Morris argues that he was denied the effective assistance of counsel, requiring a new trial. Morris does not state whether he is making this claim under the Sixth and Fourteenth Amendments to the United States Constitution or under Article I, Section 10 of the Ohio Constitution. However, our review under either the state or federal constitution is the same. *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 95.

{¶16} In evaluating a claim of ineffective assistance of counsel, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "In reviewing an ineffective assistance of counsel claim, we consider 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *State v. Bell*, 1st Dist. Hamilton No. C-210494, 2023-Ohio-1010, ¶ 9, quoting *Strickland* at 686. In order to show

ineffective assistance of counsel, "the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*, quoting *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶17} Here, Morris claims that trial counsel was ineffective for two primary reasons: first, for telling the judge, who was also the trier of fact, that without a key witness, "[w]e have no defense," thereby apparently conceding guilt; and second, for failing to cross-examine the state's witnesses effectively.

{¶18} The first alleged deficiency of counsel related to the uncertainty of whether K.M. would testify on Morris's behalf. When the court inquired if Morris was ready to proceed to trial, defense counsel informed the court:

Judge, I made it abundantly clear to Mr. Morris, when I completed the plea form, that witness [K.M.] was not going to testify on his behalf. We have no defense.

And at that time we spoke, he was saying that he was considering entering a plea without that witness, but then he shared with me that the witness was present in the hallway ready to testify on his behalf.

So as we stand here now, without that witness, Judge, I would admonish and advise my client that a plea might be in his best interest, but if he feels that the witness is going to testify, he wants to go forward with a bench trial. All I can do is ask my client privately, what do you wish to do?

I know sincerely I would advise him without that witness, he needs to enter a plea.

{¶19} As the state points out, counsel's comment that "we have no defense" is

not an admission of guilt; rather, it is a comment on the availability of a witness to corroborate Morris's version of events. Morris analogizes this to *State v. Burgins*, in which the court found ineffective assistance where defense counsel's closing argument was permeated with admissions to the defendant's probable guilt, apparently focusing the argument on the difference between a probability of guilt and proof beyond reasonable doubt. *See State v. Burgins*, 44 Ohio App.3d 158, 542 N.E.2d 707 (4th Dist.1988). However, there is a marked difference between the situation in *Burgins*, where defense counsel presented an extended argument to a jury that the defendant "probably" committed the offense, but that the state's evidence fell short of its burden, *id.* at 159-160, and the case at bar, where defense counsel made a comment to the trial judge that the effective presentation of the defense case relies on a potentially reluctant witness.

{¶20} In a bench trial, we presume that the court considered "only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Daly*, 1st Dist. Hamilton No. C-110602, 2012-Ohio-4151, ¶ 5, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 195, quoting *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987). Here, nothing suggests that the trial court improperly considered defense counsel's comment or relied on anything other than evidence presented at trial in reaching its conclusion.

{¶21} Morris's argument regarding the minimal cross-examination of the state witnesses also lacks merit. Trial counsel only asked two questions across the state's three witnesses, and those questions pertained only to clarifying the content of the lab report of the narcotics analysis. Morris suggests now that trial counsel should

have asked the state's witnesses about the lack of DNA and fingerprint analysis performed on the recovered contraband to help discredit the state's case that Morris had exercised control over the contraband.

**{¶22}** Trial counsel's lack of questioning on these topics is clearly within the realm of reasonable trial strategy. Despite the lack of cross examination, trial counsel pointed to the absence of DNA or fingerprint evidence during closing argument. The state had the burden to present evidence of guilt, and counsel did not need to elicit information about the absence of evidence from the state's witnesses. Defense counsel did not err in failing to ask such questions.

**{¶23}** Because trial counsel's conduct did not fall below an objective standard of reasonable representation, we need not examine whether it prejudiced Morris. Morris's first assignment of error is overruled.

### B. *Manifest Weight and Sufficiency of Evidence*

**{¶24}** In his second assignment of error, Morris challenges the sufficiency of the evidence presented against him. In his third assignment of error, Morris argues that his conviction was against the manifest weight of the evidence. Because both of these assignments relate to the evidence in support of Morris's guilt, we consider them together.

**{¶25}** When reviewing for sufficiency of the evidence, an appellate court asks whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16. Essentially, the court "asks whether the evidence against a defendant, *if believed*, supports the conviction." (Emphasis sic.) *Id.*

9

**{¶26}** In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We will review "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). However, we will reverse the trial court's decision to convict and grant a new trial only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin* at 175.

**{¶27}** In the context of the drug-possession charges, "possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Mitchell*, 190 Ohio App.3d 676, 2010-Ohio-5430, 943 N.E.2d 1072, ¶ 5 (1st Dist.), citing *State v. Thomas*, 1st Dist. Hamilton No. C-020282, 2003-Ohio-1185, ¶ 9. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Thomas* at ¶ 9. "Proximity to an object alone does not constitute constructive possession; it must also be shown that the individual was 'conscious of the presence of the object.' " *Mitchell* at ¶ 5, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). Proximity to the

contraband must be "coupled with another factor or factors probative of dominion [or] control over the contraband." *State v. Devaughn*, 1st Dist. Hamilton No. C-180586, 2020-Ohio-651, ¶ 34, quoting *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.). Critically, "dominion and control over an object" may be shown by circumstantial evidence. *Thomas* at ¶ 9.

**{¶28}** R.C. 2923.13 provides that persons subject to its prohibition shall not "knowingly acquire, have, carry, or use any firearm * * *." Though the statute does not provide a definition of "have" as the drug-possession chapter does, the jurisprudence on constructive possession is the same. *See State v. Finnell*, 1st Dist. Hamilton Nos. C-140547 and C-140548, 2015-Ohio-4842, ¶ 41-42.

**{¶29}** Morris argues against both the sufficiency and the manifest weight of the evidence on the theory that the state did not adequately prove that he possessed the contraband that was recovered from his apartment. Morris argues that the state's only evidence as to his possession of the contraband was his association with the apartment. Morris argues that K.M. and other, unspecified individuals also had access to the apartment, and anyone else who used the apartment could have been the source of the contraband.

**{¶30}** Morris analogizes his situation with two prior cases in which this court reversed drug-possession convictions based on insufficient evidence of possession. However, those cases are distinguishable.

**{¶31}** In *Mitchell*, the defendant was a passenger in the backseat of a car that was stopped for a headlight violation. *Mitchell*, 190 Ohio App.3d 676, 2010-Ohio-5430, 943 N.E.2d 1072, at ¶ 2. As the police officer approached the car, the passenger in the front seat exited from the car, discarded a firearm, and ran from the

officer. *Id.* A search of the car eventually revealed a "noticeable size[d] lump" in the seat-back pocket in front of Mitchell, which was determined to be marijuana. *Id.* at ¶ 3. The court found that Mitchell could not be guilty of possession of the marijuana because there was no evidence to suggest that Mitchell knew of the marijuana or exercised dominion and control over it. *Id.* at ¶ 6. Mitchell had made no furtive movements that suggested he was aware of the marijuana, nor was he the only passenger with access to the location where the marijuana was found. *Id.*

{¶32} In *Devaughn*, undercover officers had been watching a parked, unoccupied car that they suspected contained drugs, based on a tip from a confidential informant. *Devaughn*, 1st Dist. Hamilton No. C-180586, 2020-Ohio-651, at ¶ 3. While the car was under surveillance, Devaughn parked his own car behind the suspected drug car. *Id.* at ¶ 4. Devaughn exited from his car, opened the door of the drug car, and leaned into the drug car. *Id.* Devaughn then returned to his own car, and the police officers initiated the stop that led to his arrest. *Id.* at ¶ 5. An eventual search of the drug car revealed drugs in the center console. *Id.* at ¶ 9. Devaughn's conviction for possession of the drugs found in the center console of the drug car was reversed because the evidence was insufficient to show that he exercised dominion and control over the drugs. *Id.* at ¶ 37. Although Devaughn had leaned into the car, he was not the registered owner, and there was no evidence to show how far he leaned in, whether he made furtive movements while leaning into the car, or that he accessed the center console containing the drugs. *Id.* at ¶ 35. The state presented evidence that Devaughn had been seen in the car on other occasions, but even that mere presence was insufficient to show knowledge that drugs would eventually be in the car. *Id.* at ¶ 36. As such, there was no evidence to support that Devaughn had constructively possessed

the drugs.

**{¶33}** The state argues that its position on Morris's constructive possession of the contraband is supported by *State v. English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759. In that case, the court found that English was in constructive possession of drugs and firearms when he was one of two residents where the contraband was found, but he was neither the owner nor paid for utilities at the residence. *English* at ¶ 1. However, the evidence connecting English to the contraband was much stronger than what the state presented against Morris. English admitted to police that he had used drugs and told them where the drugs were stored in the residence. *Id.* at ¶ 26. English's fingerprints were found on one of the firearms, and the other was stored in a bedroom containing English's personal belongings and the drugs he had exercised control over. *Id.* at ¶ 33.

**{¶34}** We believe that a closer analogue to the case at bar is *State v. Murrell*, 1st Dist. Hamilton No. C-020333, 2003-Ohio-2068. In that case, Murrell was arrested following a consensual search of the borrowed car he was driving. *Murrell* at ¶ 2. A search of the car's trunk revealed a bundle of $1,000 cash and a bag containing 248 grams of cocaine. *Id.* at ¶ 3. The passenger compartment of the car contained more than $10,000 in cash in various locations. *Id.* Murrell denied knowledge of the cocaine in the trunk, although he claimed that $8,000 of the cash in the passenger compartment was his. *Id.* at ¶ 4. This court held that Murrell's constructive possession of the cocaine in the trunk was supported by sufficient evidence where:

> (1) Murrell so frequently used [the borrowed] automobile, and had the
> key on his personal key chain, that the vehicle was essentially at
> Murrell's disposal; (2) mail addressed to Murrell, as well as some

13

personal papers, was found in the trunk of the car; (3) a bundle of cash in the amount of $ 1000 was found in the trunk along with the cocaine; and (4) the money found in the trunk was secured with a black rubber band in the same fashion as the cash found in the paper bag behind the driver's seat that Murrell admitted to owning.

*Id.* at ¶ 19. This court determined that this circumstantial evidence was sufficient to prove Murrell's constructive possession of the cocaine. *Id.*

{¶35}  In the case at bar, the gun and drugs were found in an apartment where Morris admitted to residing and where he received mail. Morris testified that he lived in the apartment. The apartment was entirely at his disposal. Although Morris testified that K.M. lived in the apartment with him, the evidence presented tended to show that no one else lived in the apartment. That others may have had access to the apartment at various points in time is not dispositive of the matter because the apartment itself was under Morris's control. *See Murrell* at ¶ 19. We conclude that the evidence was sufficient to show that Morris was in constructive possession of the drugs and firearm.

{¶36}  Although Morris testified that the drugs and gun were not his, it is not against the manifest weight of the evidence for the trial court to credit the circumstantial evidence of guilt rather than the defendant's self-serving testimony.

{¶37}  The evidence presented by the state is sufficient to support Morris's convictions, and his convictions are not against the manifest weight of the evidence. Accordingly, Morris's second and third assignments of error are overruled.

### C. Consecutive Sentences

{¶38}  In his fourth assignment of error, Morris argues that the trial court improperly imposed consecutive sentences for his possession convictions and

community-control violation. Morris argues that the trial court did not make the required findings before imposing consecutive sentences, and as a result, the cause must be remanded for him to be resentenced.

{¶39} Before imposing consecutive sentences, the trial court must make the findings specified in R.C. 2929.14(C)(4) and incorporate those findings into its sentencing entry. Specifically, the court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and at least one of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶40}** "When imposing consecutive sentences, a trial court must make the required findings as part of the sentencing hearing and incorporate those findings in the sentencing entry." *State v. Walker*, 1st Dist. Hamilton No. C-190193, 2020-Ohio-1581, ¶ 68, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "The court need not use 'talismanic words' but the record must show that the court engaged in the requisite analysis and that the evidence supports the findings." *Id.*, citing *State v. Cephas*, 1st Dist. Hamilton No. C-180105, 2019-Ohio-52, ¶ 43.

**{¶41}** In this case, the trial court stated at the sentencing hearing:

It's these concerning allegations that don't seem to come to fruition that there might be some sort of violence involved, and you are so out of control on the substance abuse, your anger management, or some sort of problem, that you actually do pose a threat not only to yourself but to others who are around you, and that is a bit concerning there.

\* \* \*

The findings are that this is not disproportionate to the seriousness of your conduct, nor to the danger you pose to the public, but the crimes committed while under a sanction of community control at the time.

And both gun possessions are such that a single term of incarceration does not adequately reflect the seriousness of the conduct.

**{¶42}** Morris argues that the findings do not expressly state the required finding that "consecutive service is necessary to protect the public from future crime or to punish the offender." Additionally, the sentencing entry does not reflect any of the required findings.

16

**{¶43}** Although the court did not specifically use the words "protect the public from future crime," it is clear that the court engaged in the required analysis. The court specifically referenced Morris's recent trend towards violence, potentially fueled by alcohol or substance abuse, and concern for the threat Morris posed to those around him. The court also expressly considered the danger Morris poses to the public.

**{¶44}** However, the court speaks through its journal entries, and the sentencing entry does not reflect any of the required findings. *See State v. Thomas*, 1st Dist. Hamilton No. C-140070, 2014-Ohio-3833, ¶ 8. Nevertheless, an "inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law[.]" *Id.* at ¶ 9, quoting *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 30. "[S]uch a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Id.*, quoting *Bonnell* at ¶ 30.

**{¶45}** Consequently, we sustain Morris's assignment of error to the extent that the trial court erred in failing to incorporate the required findings in its sentencing entry. We therefore remand the cause to the trial court for the limited purpose of correcting this error with a nunc pro tunc judgment entry.

### III. Conclusion

**{¶46}** For the foregoing reasons, we overrule the first, second, and third assignments of error, but we sustain the fourth. Accordingly, we affirm the trial court's judgment, but remand the cause for the trial court to issue a nunc pro tunc judgment entry correcting the sentencing error with regard to Morris's consecutive sentences.

Judgment affirmed and cause remanded.

17

**WINKLER** and **BOCK, JJ.**, concur.

Please note:

> The court has recorded its entry on the date of the release of this opinion.